# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

STEPHEN MARSHALL                                            PLAINTIFF

v.                                              CIVIL ACTION NO. 3:18-CV-P843-JHM

COMMISSIONER JAMES ERWIN et al.                         DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Stephen Marshall, *pro se*, filed this *in forma pauperis* civil-rights action pursuant to 42 U.S.C. § 1983. This case is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, this case will be dismissed.

## I. STATEMENT OF CLAIMS

Plaintiff is a prisoner at the Luther Luckett Correctional Complex (LLCC). He names as Defendants Kentucky Department of Corrections Commissioner James Erwin and the following employees of LLCC: Warden Scott Jordan, Captain Tim Forgy, and Sgt. Klayton Rodgers. Each Defendant is sued in his individual and official capacities.

Plaintiff alleges First, Eighth, and Fourteenth Amendment violations from the intentional, willful, and malicious upholding of an arbitrary administrative decision in denying restoration of visitation privileges. He states that on June 30, 2018, at LLCC, his 69-year old mother was visiting him. During that visitation his mother informed the visitation staff at the control booth that she needed to use the bathroom. Plaintiff states, "She was informed that she had to have a doctor's note in order to use it, although she was never notified of this requirement via posted rule, oral or any other viable written communication."

Plaintiff attaches a number of documents to his complaint. Included in these attachments is the incident report from the visitor log from June 30, 2018. That incident report contains the following narrative:

> On June 30, 2018 at approximately 10:45 am I, Sergeant Klayton Rodgers was stopped by [Plaintiff] in the visitation room. [Plaintiff] informed me that his mother Civilian Suzanne Parker had to use the bathroom. I informed [Plaintiff] that if the visitor or yourself have to use the bathroom, the visit would be over. [Plaintiff] got upset with myself and stated, "this is bullshit. She is not a prisoner she needs to use the damn bathroom." I informed [Plaintiff] that if he got upset with myself or staff that his visit would be over. Civilian Suzanne Parker came out to the visiting lobby and told P&P Gilkey that she needed to use the restroom. P&P Gilkey told civilian Parker that the visit would be over if she used the bathroom. Civilian stated, "Okay that's fine. It's about to get Stinkey in here." [Plaintiff] stated, "Go ahead and make it stinkey." I then ended [Plaintiff's] visit and escorted civilian Parker out of LLCC. Civilian Parker stated to me on the way, "I shit my pants, this is fucking bullshit, I am going to call the Warden."

That report states "Terminated – Inmate/Visitor Behavior" and "Reason: Disruptive Behavior."

An Incident Report Summary from that date gives essentially the same narrative but includes a timeline. According to that Summary, at approximately 10:45 a.m. Plaintiff asked Defendant Rodgers if his mother could use the bathroom, at which time Defendant Rodgers told him that if either he or his mother used the bathroom the visit would be terminated. At approximately 11:05 a.m. Officer Gilkey told Plaintiff's mother after she asked to use the bathroom that if she did the visit would be terminated, to which Plaintiff's mother stated, "'That's fine. It's about to get stinky in here,'" and then went back into the visitation room. That Summary further provides, "At approximately 12:20 p.m. Mrs. Parker's visit was terminated after she defecated herself. Mrs. Parker admitted that she defecated herself to Sergeant Rodgers."

It appears from the complaint that a disciplinary action was brought against Plaintiff but that Warden Jordan dismissed it. However, Warden Jordan banned Plaintiff's mother from visiting LLCC.

Plaintiff asks for monetary damages for the "emotional and mental instability by the intentional and malicious weakening of his familial bonds by the permanent visitation ban against his mother." He also requests punitive damages and injunctive relief in the form of lifting the permanent visitation ban against his mother and cessation of "administering this unauthorized rule."

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id*. at 327. When determining whether Plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe pro se pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

*First Amendment claim*

While a prisoner loses many of his constitutional rights upon incarceration, he "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). The First Amendment right to free association is "among the rights least compatible with incarceration" and "[s]ome curtailment of that freedom must be expected in the prison context." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). However, the right to intimate association is not necessarily entirely eliminated by incarceration. *Id*. at 131-32. If prison officials seek to limit the First Amendment right of association, it may do so if the limiting regulations bear a rational relationship to legitimate penological objectives. *Id*. at 132 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). This Court must accord prison administrators substantial deference in defining legitimate goals for the corrections system, and for determining the best means of accomplishing those goals. *See Overton*, 539 U.S. at 132; *Pell*, 417 U.S. at 826-27.

Here, LLCC has adopted a rule that if a prisoner or visitor uses the restroom during visitation, the visit ends. Thus, the rule does not preclude either a prisoner or a visitor from using the restroom. It simply terminates the visit at that time, presumably for security reasons. Here, however, the incident report attached to the complaint indicates that the visit was terminated and Plaintiff's mother was escorted out because of her disruptive behavior in the visitation room, *i.e.*, defecating on herself. Affording Defendants "substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish" those goals, *Overton*, 539 U.S. at 132, the Court finds that the decision to bar

Plaintiff's mother from visitation because of her disruptive behavior in intentionally defecating on herself in the presence of other people rather than comply with the institution's rules is reasonable. This claim will be dismissed for failure to state a claim upon which relief may be granted.

***Eighth Amendment claim***

"[E]xtreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). "Implicit in this standard is the recognition that the plaintiff must allege that he has suffered or is threatened with suffering actual harm as a result of the defendants' acts or omissions before he can make any claim with an arguable basis in Eighth Amendment jurisprudence." *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998).

Here, Plaintiff provides no facts indicating that the new visitation policy deprived him of the minimum civilized measure of life's necessities or that it implicated his health or safety. Inmates are denied neither visitation nor restroom breaks. Visitation is merely cut short if an inmate or a visitor needs to use the restroom during the visitation period. Accordingly, LLCC's visitation policy does not rise to the level of an Eighth Amendment claim. The Court notes that this Court has already considered a challenge to the LLCC visitation policy in *Branham v.*

*Jordan*, No. 3:17CV-P117-TBR, 2018 WL 1863836, at *3 (W.D. Ky. Apr. 18, 2018), and found that the policy did not violate the Eighth Amendment. This claim will be dismissed.

***Fourteenth Amendment claim***

Procedural due process rights arise only when a plaintiff holds a constitutionally protected liberty interest. *Sandin v. Connor*, 515 U.S. 472, 484 (1995). "The denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,' and therefore is not independently protected by the Due Process Clause." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989) (internal citation omitted). Thus, Plaintiff does not have a liberty interest in unfettered visitation with his mother. *See Bazzetta v. McGinnis*, 430 F.3d 795, 804-05 (6th Cir. 2005) (holding that a ban on virtually all visitation for prisoners who have been found guilty of two or more major misconduct charges for substance abuse does not rise to a due process violation); *Cook v. Cook*, No. 96-3419, 1997 WL 121207, at *1 (6th Cir. Mar. 14, 1997) (holding that defendant did not violate the prisoner's due process rights by denying him visitation with his daughter, who was also the victim of the prisoner's crime); *Poole v. Mich. Reformatory*, No. 1:10-CV-378, 2010 WL 2992382, at *8 (W.D. Mich. July 26, 2010) (finding that prisoner-plaintiff had no liberty interest in visitor restriction that permanently prohibited him from visiting with his fiancée who had attempted to smuggle heroin into the prison); *Kanitz v. Cooke*, Nos. 03-cv-10180, 03-cv-10322, 2008 WL 2218259, at *5 (E.D. Mich. Mar. 5, 2008) (finding that plaintiff-prisoners "have no constitutional liberty interest in visitation"). The Court finds similarly here that Plaintiff has no liberty interest in the visitor restriction against his mother for her disruptive and unhygienic behavior while visiting him. This claim will be dismissed, as well.

## III. CONCLUSION

For the foregoing reasons, the Court will dismiss this action by separate Order.

Date: April 15, 2019

*Joseph H. McKinley Jr.* (signature)

Joseph H. McKinley Jr., District Judge
United States District Court

cc: Plaintiff, *pro se*
Defendants
General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4414.009